FRUGÉ, Judge.
Suit was brought by Louis Carter against Southern Farm Bureau Casualty Insurance Company for injuries sustained and property damages resulting from a collision between Carter’s automobile and a truck owned by Ralph Haire, the defendant’s insured. This suit was consolidated with Lewis v. Southern Farm Bureau Casualty Insurance Company, La.App., 136 So.2d 76, a companion case involving almost identical issues and in which similar relief is sought. The trial court decided in favor of defendant and both plaintiffs have appealed.
Plaintiffs, Espiller Lewis and Louis Carter, were riding in an automobile owned and driven by the said Louis Carter. The two, together with a third colored man, St. Ville Clark, were driving south on Highway 1, going to Ashley Kirkland’s place, a tavern located some twenty miles south of Natchitoches. The accident happened in the unincorporated village of Natchez, which is about seven miles southeast of the City of Natchitoches, at about midnight on Saturday, October 26, 1957.
A colored man by the name of J. W. Dun-cantel had taken a truck belonging to Ralph Haire, the named insured, which truck was covered by the policy involved in this case. Haire is a farmer and also operates a cafe and filling station on Highway 1 at Natchez. This place of business is at the intersection of Highway 1 and a black-top highway *317 known as the “Cane River Highway”. Dun-cantel drove the truck involved from behind Haire’s cafe across Highway 1; he was heading west across Highway 1 to his home, which is on Bayou Natchez.
As Duncantel drove across the highway, however, the other car driven by Louis Carter hit the right rear wheels of Haire’s truck, causing the injuries and damages involved in this litigation.
Plaintiffs contend that Duncantel was omnibus insured under the policy issued to Ralph Haire by the Southern Farm Bureau Casualty Insurance Company. This policy is in evidence, and it has limits of $5000.00 and $10,000.00 covering this particular truck. Plaintiffs contend that J. W. Duncantel was driving the truck with the knowledge, approval and consent of Haire, which would make him an omnibus insured. This the defendants vigorously deny; they contend that Duncantel took the truck against the wishes and against the specific instructions of Haire. It appears that Duncantel was an employee of Haire, was paid by the day, as a “day laborer” for only those days that he actually worked.
Duncantel’s testimony was that Haire had hired him some two months before the accident to help in the hay fields. In other words he was hired strictly for that purpose. Duncantel admitted that he had been drinking prior to the accident. Plaintiffs’ whole case pivots on Duncantel’s statement that he had asked Mr. Ralph Haire for the use of this truck when the two of them were in Shreveport or on their way to Shreveport that morning. Haire, according to Dun-cantel, didn’t say no and didn’t say yes. However, in response to a question posed to Duncantel on cross examination, we quote the following:
“Q. And he never did give you permission to use the truck, did he? A. No sir.
“Q. Huh? A. No sir, he didn’t give me permission to use it.”
After the accident Duncantel gave a statement in writing to Mr. R. D. Morrison, the adjuster for Southern Farm Bureau, which statement appears in the record as Defendant Exhibit No. 1. Duncantel signed this statement. Counsel for the plaintiffs skeptically pointed out that it was “signed” by an “X” mark. However, Duncantel, on looking at the statement, admitted he did sign his name, and the “X” was simply placed there to show where to sign. Again after the statement was read to him, Duncantel said:
“Q. All the rest of it, about not having the authorized use of the truck was correct. Mr. Haire had not told you you could use the truck? A. No sir, he didn’t tell me I could use it.”
Of course, the only two people who could know whether or not Haire had given Dun-cantel permission to use the ' truck were Haire and Duncantel themselves. Duncan-tel testified that he had asked Haire three or four times for permission to use his truck on the night of the accident and Haire refused to give his permission. Duncantel further testified after the fourth request Haire just “didn’t say anything”. Plaintiffs contend that “under all the circumstances and the repeated use of the vehicle in the past, Haire’s failure to further register his disapproval amount to an affirmative answer. ‘Silence means consent’.” Plaintiffs point out that Duncantel admitted throughout his testimony that Mr. Haire did not give him permission to use the truck, but he did not forbid him specifically to use it; however, Duncantel, on the other hand also admits that when he used the truck previously (which was about twice) he had received specific authorization from Haire to do so. There is no question here that Duncantel was not acting within the course and scope of his employment. It was midnight, he was drunk and, according to his own testimony, he was simply driving or was trying to “borrow” the truck to go take his wife to visit her father. This was certainly not on any business of Haire.
*318 Haire himself is quite positive that he never told Duncantel that he could have the truck on the night in question. His testimony on this point does not vary. Furthermore, the plaintiff, Louis Carter, himself voluntarily admitted that immediately after the accident Haire said specifically that Duncantel had no business using the truck and that he did not have his permission to do so. In his statement the afternoon after the accident Haire denied giving Duncantel authority to use the truck. In a statement given to the insurance adjuster on the Monday following the accident, Haire again in writing said that Duncantel did not have permission to use the truck. We cannot see how, under the facts in this case, the omnibus clause can possibly come into play. The driver of the vehicle must have the consent, permission and authority of the named insured or his spouse. While we are not favored with reasons, the trial court properly evaluated the entire testimony of all witnesses and must have concluded that there was no convincing evidence in these cases to show that Haire expressly or impliedly gave Duncantel permission to use his truck at the time of the accident. In that conclusion we agree and consequently find no manifest error by the court below.
Counsels for the plaintiffs have cited several cases in their briefs in which they attempt to show that when initial permission is given for the use of a vehicle that such permission should be liberally construed so as to afford coverage under the omnibus clause of an automobile liability policy, even when the initial permittee deviates from or violates the instructions given by the owner as to the use of the vehicle. These cases actually have no application in the instant case and are very easily distinguished from it, because the named insured did not expressly or by implication grant Duncantel permission to use the said truck.
In summing up the decisions cited by the parties it would seem that the omnibus clause coverage does not come into effect unless the named insured has given initial permission for the use of the insured vehicle at the time the accident occurred.
In most of the cases quoted by the plaintiffs, the vehicles involved in the accidents were under the exclusive custody, control and possession of the drivers at the time of the accident and the named insureds knew that the drivers had the vehicles in their possession, although in some of the cases the use being made of the-vehicles was against general instructions given by the named insured.
The defendant further urges that, if the court should find that there is coverage, then, in the alternative the court should consider the following:
“[T]hat Louis Carter one of the plaintiffs, was driving at a high and excessive rate of speed in an unincorporated village. His speed, lack of control and want of observation of traffic conditions, should be sufficient to bar his recovery. He was certainly contribu-torily negligent or this accident would never have happened. The other plaintiff, Espiller Lewis, was riding with Carter, and was certainly aware of the fact he was riding with a man who was drinking and who was driving at an excessive rate of speed through a village. The negligence of the driver should be imputed to Espiller Lewis. There is sufficient contributory negligence on his part to likewise bar his recovery.”
However meritorious this argument may be, we feel there is no need to consider it since we are of the opinion that there was no coverage afforded under the terms of the policy involved, since the truck was not being driven with the consent, approval or permission of the named insured.
We find no manifest error with the trial court’s decision; for the above and foregoing reasons the judgment of the trial court is affirmed.
Affirmed.