238 So.2d 248 (1970)
Thomas GUIDRY et ux., Plaintiff-Appellant-Appellee,
v.
Rodney R. RHODES et al., Defendants-Appellees-Appellants.
No. 3159.
Court of Appeal of Louisiana, Third Circuit.
July 29, 1970.
*249 Plauché, Sanders & Smith, by Thomas W. Sanders, Lake Charles, for defendants-appellants.
Bean & Rush, by Warren D. Rush, Lafayette, for plaintiff-appellee.
Hall & Coltharp, by L. H. Coltharp, Jr., DeRidder, for defendant-appellee.
Before FRUGE, SAVOY and CULPEPPER, JJ.
SAVOY, Judge.
This is a suit in tort arising out of an automobile accident that occurred May 16, 1965, on Louisiana Highway 467 in Vernon Parish. Plaintiffs were passengers in a 1965 Chevrolet car owned by plaintiffs, which was being driven by a friend, Edmond Quintana. The other vehicle involved in the accident was a pick-up truck owned by defendant, Rodney R. Rhodes, and being driven by defendant, Marvin P. Weaver. Plaintiff also joined as defendants the liability insurer of Rodney R. Rhodes, Connecticut Fire Insurance Company, and alternatively, their own liability insurer, State Farm Mutual Automobile Insurance Company, under the provisions of the uninsured motorist clause.
A declinatory exception of lack of jurisdiction over the person of the defendant was filed on behalf of Marvin P. Weaver. This exception was maintained, and plaintiffs' suit was dismissed as against Marvin P. Weaver. Plaintiffs filed an appeal to this Court.
After trial by jury on the merits of the case, the district court entered judgment on the verdict of the jury, against the defendant, Connecticut Fire Insurance Company, in favor of Thomas Guidry for $7,720.00, and in favor of Mrs. Mildred M. Guidry for $500.00. The demands of the plaintiffs as against Rodney R. Rhodes and State Farm Mutual Insurance Company were rejected.
From this judgment, defendant, Connecticut Fire, filed an appeal to this Court, and the plaintiffs filed an answer to the appeal.
The issues raised by the briefs in these appeals are:
1. Whether or not Marvin P. Weaver had actual or implied permission to drive the pick-up truck involved in the accident so as to make him an insured under the omnibus clause of the liability insurance policy issued by Connecticut Fire in favor of Rhodes.
2. In the event no insurance coverage is afforded to Marvin P. Weaver, are plaintiffs entitled to judgment against their own insurance carrier under the uninsured motorist and collision clauses.
3. Whether or not the award granted to Thomas Guidry for his personal injuries is manifestly excessive.
*250 4. Whether or not the district court erred in sustaining the exception to the jurisdiction over the person of defendant, Marvin P. Weaver.
The record shows that on the morning of the accident the defendant, Rhodes, obtained the help of Weaver and another person named Ackerson to move two commercial clothes dryers. These dryers were part of a small washateria owned by a friend of Rhodes who was disabled, and the work was done as a personal favor. After completion of the moving job, the parties visited a local lounge, where alcoholic beverages were consumed. Then Weaver accompanied Rhodes to Rhodes' house trailer, where they had more drinks and ate a meal prepared by Mrs. Rhodes. Mrs. Rhodes had left the trailer to visit a neighbor after preparing the meal, and Rhodes went to sleep, leaving Weaver to watch television in the trailer as he waited for a friend to pick him up to visit a nearby city. Some time later, Weaver took the pick-up truck and was driving in the direction of Fort Polk, where Weaver was stationed, when the accident occurred, causing personal injuries and damages to plaintiffs. It is not disputed that the sole and proximate cause of the accident was the negligence of Weaver, and the record bears out this fact.
Rhodes testified he was an electrician working at Fort Polk as a civilian. He had met Weaver in September, 1964, on a project at the base. Weaver was an electrician's helper with the 46th Engineer Battalion. He stated he was a friend of Weaver, though not a close personal friend. He had seen Weaver only on occasions at a local bar or restaurant, and on one occasion had invited Weaver with a group of other co-workers from the base to his home for a barbecue. He testified he went to the base on the morning of May 16, 1965, to get a friend named Ackerson to help him move the dryers and machinery of the washateria, and that Ackerson suggested they pick up Weaver. They picked up Weaver about mid-morning and proceeded to the washateria. There two large dryers were disconnected, loaded on the pick-up truck and delivered to another location in the Leesville area. Two trips were required because of the size of the units. After the work, at about 2:00 P.M., the parties visited a local lounge for a few drinks. Rhodes testified that Ackerson got a ride back to the base with someone else, Weaver accompanied Rhodes to his trailer. They arrived there about 2:30 or 3:00 P.M., had a few more drinks and ate a meal Mrs. Rhodes had prepared. He testified he did not have a telephone, and that Weaver went out to telephone someone who was to pick him up to go to a nearby city. Weaver asked permission to wait at the trailer for his ride. They watched television for a while. Rhodes testified he got sleepy and told Weaver he could watch television, but he was going to lay down and take a nap. He went to sleep in the back bedroom and was later awakened by his wife who told him about the accident. Rhodes testified that Weaver did not drive the truck during the time they were moving the dryers, nor had he ever driven the truck prior to the time of the accident. He testified that he had never given Rhodes permission to use the truck.
The testimony of Weaver was taken by two depositions which were filed in evidence. Weaver testified that at the time of the accident his home was in Delaware, and that he was in the U. S. Army assigned to duty at Fort Polk. He stated that Rhodes was a supervisory civilian electrician, and he saw him several times a week in his work. He testified he helped Rhodes during the morning and early afternoon moving washing machines to a warehouse; that afterwards they drove to Rhodes' house, and that after lunch he drove the truck from the house to the point where the accident occurred. He was not an employee of Rhodes and received no pay for his help. He testified he drove the truck earlier the same day while moving the machines. He testified Rhodes had asked him to move the truck in a better position to get one of the machines loaded. *251 He stated he drove the truck a couple of times while helping in moving the machines. He testified he had never used the truck for his own personal use on any other occasion prior to the accident. The only consent from Rhodes to drive the truck was on moving the machines. He testified, "I specifically did not have permission from Mr. Rhodes nor his wife to use the truck on the day of this accident." Further, he stated that there was no conversation at all about his taking the truck, that "Mr. Rhodes was asleep and did not know I was taking it." He stated he did not know if the keys to the truck were in the ignition or on the table in the house. He admitted drinking three bottles of beer before the accident.
With reference to the first issue, counsel for plaintiffs and State Farm Mutual Automobile Insurance Company maintain that it was reasonable for a jury to find that Weaver had implied permission from Rhodes to drive the pick-up back to Fort Polk under the facts and circumstances of this case. Counsel for defendant, Connecticut Fire, maintains that plaintiffs failed to carry the burden of proving that Weaver was operating the vehicle with the permission of Rhodes, either actual or implied, at the time of the accident.
In order to show that Weaver was an additional insured under the omnibus clause of the automobile liability policy issued to Rhodes, it was necessary that plaintiffs establish by a preponderance of the evidence that Weaver had permission to use the pick-up truck. Such initial permission may be either express, or implied from the circumstances. Parks v. Hall, 189 La. 849, 181 So. 191 (1938), a landmark case; Carter v. Southern Farm Bureau Casualty Insurance Company, 135 So.2d 316 (La.App. 3 Cir. 1961); McConnell v. Travelers Indemnity Company, 248 La. 509, 180 So.2d 406 (1965) and cases cited therein; Holden v. Transamerica Ins. Co., 222 So.2d 302 (La.App. 1 Cir. 1969).
Under the facts and circumstances of the case before us on appeal, this Court finds no substantial evidence to support the holding that Weaver had permission to drive the pick-up truck. First of all, there was not express permission given. Rhodes testified that he gave no consent for Weaver to drive the truck. Weaver also stated unequivocally that he did not have permission from Rhodes or his wife.
In an effort to show implied permission from Rhodes to Weaver to drive the truck, evidence was introduced to show a close relationship between Rhodes and Weaver. However, this Court does not find that the facts show any basis on which it might be inferred that Weaver had an implied permission to use Rhodes' truck.
One of the most important considerations was the prior use of the truck by Weaver. Although Rhodes denied that Weaver drove the truck, Weaver testified he drove it a couple of times during the moving operation earlier that day. His testimony in the depositions is not complete, and there is some question as to whether he testified he simply helped move or spot the truck on location to assist in the loading of the equipment, or whether he drove from one location to the other. In any event, his assistance in driving the truck during the work done that day, on a couple of occasions as he testified, in the presence of Rhodes, would not amount to an initial permission for him to later use the truck on a purely personal mission. Nor did Weaver consider that he had such permission. The evidence shows that Weaver had never driven the truck out of the presence of Rhodes or on a personal mission.
The record does show there were numerous employment and social contacts between Rhodes and Weaver over a period of several months. On occasions they had drinks together with a group of other people at the Rod and Gun Club at Fort Polk, and they had seen each other at a local bar or restaurant. However, these were *252 chance occurrences, and the only social meeting that was planned was the barbecue which Rhodes held for a number of the co-workers from the base, which included Weaver. This was when Mrs. Rhodes first met Weaver, and she saw him a second time on the day of the accident. Although the evidence shows that Rhodes and Weaver were friends, they were not shown to be close personal friends. However, the relationship between the parties and the particular facts and circumstances of this case are not such as might indicate that Weaver might have implied permission to use Rhodes' truck, nor was Rhodes the employer of Weaver. The facts of the case simply show that Weaver made no effort to secure permission from Rhodes to use the truck, although he could easily have requested such permission.
Counsel for plaintiffs and State Farm rely mainly on the case of Talbot v. Allstate Insurance Company, 76 So.2d 76 (La. App. 2 Cir. 1954). In that case the court affirmed a jury finding that there was an implied permission for the operator of the car to use it under the facts of the case. The court found that the "initial permission" rule was applicable, because of the last previous use of the vehicle by the operator on the prior evening, and concluded that the omnibus clause came into effect. The court gave the following re sume of the facts:
"The following facts are pertinent to a resolution of the question of whether or not Mrs. Taylor had permission to use Mr. Turley's automobile; Mr. and Mrs. Turley, residents of Houston, Texas, came to visit Mr. and Mrs. Taylor, who were residing in Bossier City. Mrs. Turley and Mrs. Taylor are sisters. On the evening before the accident the Turleys arrived in Shreveport and not knowing how to get to the Taylor residence, phoned the Taylors to come and meet them. After this was done Mrs. Taylor drove Mrs. Turley to the Taylor home in the Turley car and Mr. Turley rode in the Taylor car. Arriving at the Taylor home, the Turley car was parked in the driveway. The couple spent the night at the Taylor home. On the following morning Mr. Turley accompanied Mr. Taylor to his office in the Taylor automobile, leaving his own automobile and the keys to it at the Taylor home. Later Mrs. Taylor drove the Turley automobile for the purpose of getting her domestic maid and while on this mission the accident with the Talbot car occurred.
"Mr. Turley testified to the facts above outlined and further testified that he could not recall what he had intended to do with the keys, stating that he thought he must have left his keys lying on the dresser. He could not recall whether he had left the keys there for his wife on that particular occasion, but that he customarily did so. He did not recall whether Mrs. Taylor had returned the keys to him or not. He stated he did not give any express consent for Mrs. Taylor to use the automobile, but he would have had no objection to her taking it and that had he been there he probably would have gone on the trip with her. On no occasion did he ever protest the use of his car by Mrs. Taylor. Mrs. Taylor's testimony was substantially in accord with the testimony of Turley."
We find that the Talbot case, supra, is distinguishable from the instant case in several particulars. There was a close relationship between the parties; the wives were sisters, and the Taylors were house guests of the Turleys. The husbands used one car to go to the office, obviously leaving the other car for use of the wives. Mr. Turley testified he had no objection to the use of the car by Mrs. Taylor, who had driven the car on its last use the previous evening.
This Court finds more applicable the holdings in the following cases: Carter v. Southern Farm Bureau Casualty Insurance Company, 135 So.2d 316 (La.App. 3 Cir. 1961); Holden v. Transamerica Insurance *253 Company, supra; and Continental Casualty Company v. Quebedeaux, 234 F.2d 241 (U.S.Ct.App. 5 Cir. 1956).
Since we conclude that the facts involved do not warrant the existence of either express or implied initial permission for Weaver to use the truck owned by Rhodes, Weaver was not covered as an additional insured under the omnibus clause of the liability policy issued by Connecticut Fire, and the judgment against that company will be reversed.
This brings us to the second issue. The record shows that Weaver was not otherwise insured at the time of the accident, and was, therefore, an uninsured motorist. Plaintiffs held a liability insurance policy with State Farm covering their automobile which was involved in the accident, and this policy provides coverage for loss by collision, less a $100.00 deductible, and against loss caused by an uninsured motorist. Accordingly, plaintiffs are entitled to judgment in accordance with the provisions of their policy. The record substantiates the loss to plaintiffs' car at $2,720.00, and plaintiff, Thomas Guidry, should be awarded the sum of $2,620.00 for his loss by collision. There is no dispute as to and the record substantiates the award of $500.00 to Mrs. Guidry for her personal injuries. The jury rendered a verdict for plaintiff, Thomas Guidry, for $8,000.00 for his personal injuries and $700.00 for special damages, but judgment was granted for $5,000.00 which was the policy limits of the policy issued by Connecticut Fire. The uninsured motorist provision of the policy by State Farm also provides a limit of liability for injury to one person of $5,000.00.
The next issue for consideration is whether or not the award of $5,000.00 to plaintiff, Thomas Guidry, for his personal injuries and relating damages was manifestly excessive.
Dr. Edward M. Harrell, a medical practitioner of Lafayette, examined plaintiff, Thomas Guidry, at his home on the day following the accident. Plaintiff complained of severe pain in the chest, head and neck. There was a small laceration of the left leg which had been treated at the hospital at Fort Polk on the night of the accident. He gave plaintiff muscle relaxants and medication for pain, treating plaintiff regularly from May 17, 1965, to March 1, 1966, a total of about thirty times. Xrays ultimately revealed a fracture of the 1st rib on the left side and of the 2nd rib on the right side. There was no displacement of these fractures. Plaintiff had difficulty in swallowing a few weeks and had severe pain. He was allowed to return to work after three weeks. Dr. Harrell did not prescribe hospitalization, traction or a neck brace. Approximately 15 diathermy treatments were given to plaintiff, and he was followed on medication regularly to March 1, 1966. He saw plaintiff again on October 21, 1968, and plaintiff was still complaining of pain. An Xray in 1968 showed a calcification of the anterior cervical ligament, indicating a hemorrhage in that ligament some time previous. He felt that plaintiff's trouble was related to the accident as plaintiff had received a very severe injury. As of the visit on October 17, 1968, Dr. Harrell felt plaintiff had recovered except for the pain in his neck. He indicated that plaintiff would have to learn to live in a certain amount of discomfort, which he might have the rest of his life.
Considering the recent awards to others with similar injuries as received by Thomas Guidry, particularly those where the plaintiffs had difficulties which lasted over a long period of time, this Court finds that the award of $5,000.00 to Thomas Guidry was proper.
The final issue is whether or not plaintiffs' suit as against Weaver should have been dismissed on the exception of lack of jurisdiction over the person of the defendant.
The basis of the ruling is not indicated in the record or in plaintiffs' brief. Plaintiffs *254 maintain that the provisions of LSA-R.S. 13:3201 et seq., and LSA-R.S. 13:3474 and 3475 are applicable, and that the service of process on the Secretary of State and on Weaver by certified mail was sufficient to vest the court with personal jurisdiction over this defendant.
At the time of the accident the defendant was in the Army stationed at Fort Polk. He had been drafted and resided there because of his military obligation, and his legal domicile remained in Delaware. His tour of duty ended in November, 1965, and he returned to Delaware, where he was living at the time suit was instituted and through the time of his second deposition on February 19, 1969.
The abbreviated record filed with this Court does not show any returns of service. Two affidavits were introduced indicating that plaintiffs' counsel had mailed by certified mail, return receipt requested, a certified copy of the pleadings to Weaver at addresses in Delaware on January 2, 1969, and on March 20, 1969. However, no return receipts were attached thereto, and there is no proof whatever in the record that Weaver received by mail or was served the process. Proof of service of process is required by both statutes invoked by plaintiffs, and in the absence of such proof, the district court properly held that it did not have personal jurisdiction over the defendant, Weaver. Accordingly, the judgment on the exception will be affirmed.
For the reasons assigned, the judgment of the district court as against Connecticut Fire Insurance Company is reversed, and judgment is hereby rendered against plaintiffs, rejecting their demands and dismissing their suit as against Connecticut Fire Insurance Company. The judgment of the district court in favor of State Farm Mutual Automobile Insurance Company is reversed, and judgment is hereby rendered against State Farm Mutual Automobile Insurance Company and in favor of plaintiff, Thomas Guidry, in the amount of $7,620.00, plus legal interest from date of judicial demand, until paid, and in favor of plaintiff, Mildred M. Guidry, in the amount of $500.00, plus legal interest from date of judicial demand, until paid. In all other respects, the judgments appealed from are affirmed. All costs in the district court and on appeal are assessed against State Farm Mutual Automobile Insurance Company.
Affirmed in part, reversed in part and rendered.