689 F.2d 1256
 Sidney BOUDREAUX, individually, as the natural tutor of his
minor child, Sidney Boudreaux, Jr., and as the
statutory survivor of his minor child
Andrea Boudreaux, et al., Plaintiffs,
v.
ABC INSURANCE CO., et al., Defendants,
BEHRING INTERNATIONAL CORP., et al., Defendants-Appellants
Cross Appellees,
v.
HERTZ CORPORATION, Defendant-Appellee Cross Appellant.
 No. 81-3603
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 29, 1982.
 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Donald O. Collins, New Orleans, La., for defendants-appellants cross appellees.
 Emile L. Turner, Jr., New Orleans, La., for defendant-appellee cross appellant.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before BROWN, RUBIN and RANDALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 The question on appeal is the extent to which Hertz Corporation is liable for damages arising out of an accident negligently caused by an unauthorized driver of one of its rental vehicles. The district court held that Hertz was liable under an implied omnibus insurance clause but limited liability to the amount required by Louisiana's Financial Responsibility Law. The other defendants, Behring International Corp., et al., appeal the limitation of Hertz's liability and Hertz cross-appeals contending that it was not liable at all. For the reasons stated below, we affirm.
 
 
 2
 I. PROCEDURAL AND FACTUAL BACKGROUND.
 
 
 3
 Robert Manuel, the driver of the Hertz automobile, was an employee of Behring International Corporation (Behring), and was working as a freight forwarder for Behring in Morgan City, Louisiana, on March 11, 1979, the date the accident occurred. On this same date, Jimmy A. Jaynes was also working in Morgan City as a self-employed shipping agent. Manuel had been joined in Morgan City by two other Behring employees, Anthony Cassard and Michael Harris. It was necessary for Jaynes to work with the Behring employees, but the district court found that they were not engaged in any type of joint venture.
 
 
 4
 Manuel was using a company car to take him to and from the job site and Cassard used his own automobile. Jaynes rented an automobile from Hertz Corporation at the airport to use for his transportation. On the day of the accident, Michael Harris drove Manuel's car to Houston, leaving two cars for the three men. There was conflicting testimony as to whether both cars were put at the disposal of all three.
 
 
 5
 On the evening of the accident, Cassard, Manuel and Jaynes went up to Jaynes' hotel room. Jaynes threw his keys on the bed and said he was going out for a short while but the other two should "make themselves at home." Apparently Manuel took the keys and he and Cassard went down to the bar to wait for Jaynes to return for dinner. At approximately 6:00 p.m., Manuel got up and told Cassard that he was going out but would be right back. When Jaynes arrived around 9:00, Manuel still had not returned. Jaynes and Cassard ate dinner and went to sleep.
 
 
 6
 The following morning Jaynes called Cassard and asked him if Manuel had returned or if he had seen Jaynes' car. Shortly thereafter, the police called and informed the two men that Manuel had been in an accident in the rented car about twenty miles outside of Morgan City. Manuel's car had collided with plaintiff Boudreaux's car, killing Manuel and Andrea Boudreaux and injuring Barbara and Sidney Boudreaux, Jr.
 
 
 7
 Plaintiffs brought a personal injury action in district court against the ABC Insurance Company, Manuel's insurer; Behring; Behring's insurer, Travelers Insurance Co.; and Hertz under Louisiana's Direct Action Statute, La.Rev.Stat.Ann. § 22:655 (West 1978). The federal courts have jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332. Plaintiffs settled the case with Behring and its insurance company, Travelers Insurance Co., for $145,000 and the matter was set for trial to determine whether Hertz was required to contribute to the settlement.
 
 
 8
 The district court held that Hertz was liable pursuant to an implied omnibus insurance clause in its rental agreement, but that liability was limited to $10,000, the minimum required by Louisiana's Financial Responsibility Law. La.Rev.Stat.Ann. 32:899 (West 1963 & Supp. 1982). Behring, et al., appeal the limitation on liability and Hertz cross-appeals contending: (1) that it cannot be sued under the Direct Action Statute because it is not an insurance company; (2) that Manuel was not covered under any omnibus insurance clause because he did not have the named insured's permission to drive the car; and (3) that Manuel was not covered because he did not have Hertz's permission to drive the vehicle.
 
 
 9
 II. HERTZ'S AMENABILITY TO SUIT UNDER THE DIRECT ACTION STATUTE.
 
 
 10
 As the district court noted, the threshold question in this case is whether Hertz is amenable to suit under Louisiana's Direct Action Statute, La.Rev.Stat.Ann. § 22:655 (West 1978). Hertz contends that it cannot be sued under the statute because it is not an insurance company. While we are not aware of any Louisiana case where an entity other than an insurance company was sued under the statute, we find the district court's rationale for allowing this suit convincing.
 
 
 11
 Hertz had obtained a certificate from the State of Louisiana, Financial Responsibility Department pursuant to La.Rev.Stat.Ann. § 32:1042 (West 1963 and Supp. 1982), declaring that it was a self-insurer. In the usual situation the driver of the vehicle is covered under an insurance policy issued by an insurance company and the Direct Action Statute allows the injured party to sue the driver's insurance company. As a self-insured, Hertz no longer carried an insurance policy covering its vehicles, since it had shown the State that it had sufficient funds to pay any judgment rendered against it. However, in the sense that its rental agreements promised to provide liability coverage to its customers,[1] "it is acting as an insurance company and should be treated as one." Boudreaux v. ABC Insurance Co., No. 81-3603, slip op. at 9 (E.D.La. Aug. 31, 1981).[2] Having promised its customers that it would insure, if requested to do so, Hertz is effectively estopped from now claiming that it cannot be sued as an insurance company. As the district court noted, holding Hertz amenable to suit accords with the intent of the statute to provide coverage for the benefit of injured parties:
 
 
 12
 It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insureds or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy.
 
 
 13
 La.Rev.Stat.Ann. § 22:655 (West 1978).
 
 
 14
 III. THE EXISTENCE AND INTERPRETATION OF THE INSURANCE CONTRACT.
 
 
 15
 While there was no actual insurance policy in this case, Hertz did maintain in Paragraph 8 of its Rental Agreement that it:
 
 
 16
 provides liability coverage for Customer and any operator authorized by Lessor in accordance with the standard provisions of a Basic Automobile Liability Insurance Policy as required in the jurisdiction in which the vehicle is operated....
 
 
 17
 The district court held that this provision constituted an insurance contract between the customer, Jaynes, and the lessor, Hertz, and that the contract included an "omnibus insureds" provision as described in the definition of a standard policy under the Louisiana Code, La.Rev.Stat.Ann. § 32:900 (West 1978).[3] We must assume the existence of an insurance contract between Hertz and Jaynes unless the district court's finding to that effect was clearly erroneous. Fed.R.Civ.P. 52(a). The district court's finding is supported by Paragraph 8 of the rental agreement which promises liability coverage to the customer. This provision could logically be read to mean that Hertz is contracting to offer the customer insurance coverage.
 
 
 18
 We turn then to the interpretation of the contract. An ambiguous insurance contract must be construed against the insurer who wrote it and should be read liberally so as to indemnify the insured. McDaniels v. Great Atlantic and Pacific Tea Co., 602 F.2d 78 (5th Cir. 1979); Walter v. Marine Office of America, 537 F.2d 89 (5th Cir. 1976); Calcasieu-Marine National Bank of Lake Charles v. American Employment Insurance Co., 533 F.2d 290 (5th Cir.), cert. denied, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976). Accordingly, we hold that the district court's interpretation that the statement in the rental agreement promising standard liability coverage included an omnibus clause covering the "named insured" and anyone to whom he gave express or implied permission to use the vehicle was correct since an omnibus clause is part of the "standard liability coverage" in Louisiana as defined in the Louisiana Code. La.Rev.Stat.Ann. § 32:900 (1978).
 
 
 19
 We also affirm the district court's finding that the customer was the "named insured" under the Hertz insurance "policy." The wording of Paragraph 8 in the rental agreement is ambiguous and we cannot say that the district court's interpretation of "named insured" is in error, particularly in light of the generally expansive reading accorded omnibus clauses by the Louisiana courts, see Pullen v. Employers Liability Assurance Corp., 230 La. 867, 89 So.2d 373 (1956).
 
 
 20
 The question then becomes whether Hertz effectively excluded persons such as Manuel from coverage by its restriction on the use of its vehicles to certain authorized persons.[4] Specifically, the rental agreement read as follows:Vehicle shall NOT be operated by any person except Customer and the following Authorized Operators who must be validly licensed to drive and have Customer's prior permission: persons 21 or over who are members of Customer's immediate family and permanently reside in Customer's household; the employer, partner, executive officer, or a regular employee of Customer; additional authorized operator(s) approved by Lessor in writing.
 
 
 21
 Customer agrees not to permit use of Vehicle by any other person without obtaining Lessor's prior written consent.
 
 
 22
 There is no contention that Manuel was a member of Jaynes' family or that he was approved by Hertz in writing as an additional authorized operator. The trial court found that Manuel could not be considered a co-employee or joint venturer with Jaynes and no one has challenged that particular finding. It would seem then that Manuel was not an authorized operator of the vehicle within the meaning of the rental agreement.
 
 
 23
 While Louisiana has no express prohibition on the exclusion of certain people from coverage, the requirements for such a modification of an insurance contract are strict:
 
 
 24
 No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific references to another policy or written evidence of insurance.
 
 
 25
 La.Rev.Stat.Ann. § 22:628 (West 1978). Cf., Jones v. Breaux, 289 So.2d 110 (La.1974); Lunda v. Sauer, 389 So.2d 915 (La.App.1980); Grady v. Allstate Insurance Co., 355 So.2d 1070 (La.App.1978). The provision in the Hertz rental agreement prohibiting the use of its vehicles by unauthorized drivers, did not on its face have anything to do with insurance coverage. Furthermore, the interpretation of the restriction as separate and apart from any question of insurance coverage is supported by Hertz's own rental procedure. When a person rents a vehicle, he or she is given the option of purchasing additional insurance coverage or relying on Hertz's promise of coverage. The restriction on the vehicle's use applies no matter what the lessee decides regarding insurance and would seem to be addressed to Hertz's desire to limit who might damage its vehicles, rather than whom it will insure.
 
 
 26
 Paragraph 8 promises "liability coverage for customer and any operator authorized by lessor ..." The use of the conjunction "and" could logically imply the provision of standard coverage, including omnibus coverage, to the customer, in addition to coverage to authorized drivers. Certainly the wording of the paragraph does not specifically exclude anyone from coverage. In light of our duty to construe an ambiguous provision in an insurance contract against the insurer, McDaniels, supra, we hold that an omnibus clause without any exclusions was part of the insurance contract between Hertz and Jaynes.
 
 
 27
 IV. IMPLIED PERMISSION FROM THE NAMED INSURED.
 
 
 28
 Manuel was covered under the omnibus clause only if he had permission from the named insured, Jaynes, to drive the automobile. We must affirm the district court's finding that Manuel had Jaynes' implied permission to operate the vehicle, as long as that finding is not clearly erroneous. Fed.R.Civ.P. 52(a). Under Louisiana law, implied permission "arises from a course of conduct by the named insured involving acquiescence in, or lack of objection to, the use of the vehicle." Wolfe v. Employers Commercial Union Insurance Co., 272 So.2d 714, 715 (La.App.1973). In making such a determination, the court must consider all of the facts and circumstances involved. Gremillion v. Coleman, 316 So.2d 810 (La.App.1975).
 
 
 29
 While there was conflicting testimony at trial concerning Mr. Jaynes' authorization of the others to drive the rented vehicle, there was evidence in the record from which the trier of fact could find implied permission. All witnesses testified that Jaynes had given rides to his companions. Harris said that Jaynes had assented to Manuel's statement to Harris that he could drive Jaynes' car since Harris was driving Manuel's car back to Houston. Further, Jaynes' throwing the keys on the bed could well have been taken as authorization to use those keys. The cases cited by Hertz where the courts did not find implied permission are distinguishable on their facts. E.g., Wolfe, supra (no evidence offered at trial of implied or express permission); Guidry v. Rhodes, 238 So.2d 248 (La.App.1970) (driver testified that he did not have permission from the insured to drive the vehicle).
 
 
 30
 Since we cannot say that the district court's finding of implied permission was plain error, we affirm and hold accordingly that Manuel was covered under the omnibus clause in the Hertz insurance contract.
 
 
 31
 V. THE LIMITATION OF HERTZ'S LIABILITY.
 
 
 32
 Behring contends that the district court erred in limiting Hertz's liability to the minimum required by the Louisiana Financial Responsibility Law. We agree with the district court that there was no ambiguity in Hertz's limitation of its liability. After promising some liability coverage, Paragraph 8 of the agreement clearly stated that:
 
 
 33
 ... In the event that coverage is imposed, by operation of law, to the benefit of any person other than the customer or any Authorized Operator described herein, then the limits of such coverage shall be the minimum requirements of the Financial Responsibility Law or other applicable statute of the state or other jurisdiction in which the accident occurred....
 
 
 34
 Hertz met the requirements for modification of the standard contract, by placing its limitation in the very same paragraph as the coverage. La.Rev.Stat.Ann. § 22:628. Therefore, we uphold the district court's limitation of Hertz's liability to $10,000, the minimum required by Louisiana law, and its order that Behring and Travelers Insurance Company pay the remainder.
 
 
 35
 Hertz shall bear the costs of this appeal.
 
 
 36
 AFFIRMED.
 
 
 
 [1]
 Paragraph 8 of the rental agreement provides:
 Lessor provides liability coverage for Customer and any operator authorized by Lessor in accordance with the standard provisions of a Basic Automobile Liability Insurance Policy as required in the jurisdiction in which the vehicle is operated (excluding optional coverages) against liability for bodily injury, including death (limits $100,000 each person, $300,000 each accident) and property damage (limit $25,000) arising from use of vehicle as permitted by this Agreement. Coverages hereunder shall automatically conform to the requirements of any "No-Fault" Law which may be applicable. In the event that coverage is imposed, by operation of law, to the benefit of any person other than the customer or any Authorized Operator described herein, then the limits of such coverage shall be the minimum requirements of the Financial Responsibility Law or other applicable statute of the state or other jurisdiction in which the accident occurred. Lessor warrants that to the extent permitted by law, the coverage described in this Paragraph 8 is primary as respects any other insurance available to Customer or any Authorized Operator. Customer shall indemnify and hold harmless Lessor, from and against all loss, liability and expense in excess of the limits of liability provided for herein as a result of bodily injury, death or property damage caused by or arising out of the use or operation of vehicle.
 
 
 [2]
 Except for Hertz's challenge to the applicability of the Direct Action Statute, no one has raised the question whether Hertz's status under the Insurance Code has any effect on the issues under consideration in this case, and we specifically express no opinion on this question
 
 
 [3]
 The standard liability policy:
 Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, ten thousand dollars because of bodily injury to or death of two or more persons in any one accident, and one thousand dollars because of injury to or destruction of property of others in any one accident.
 La.Rev.Stat.Ann. § 32:900(B)(2) (West 1978).
 
 
 [4]
 This case is distinguishable from Washington v. Dixie Leasing of New Orleans, Inc., 352 So.2d 363 (La.App.), writ denied, 354 So.2d 210 (1978) in that the rental agency in Dixie Leasing specifically informed the lessee that unauthorized drivers would not be covered by the agency's insurance. In addition, the agency, not the lessee, was the "named insured" under the insurance policy